```
                    DISTRICT COURT OF THE VIRGIN ISLANDS
                      DIVISION OF ST. THOMAS AND ST. JOHN

THE BANK OF NOVA SCOTIA,            )
                                    )
            Plaintiff,              )
                                    )
      v.                            )    Civil No. 2017-41
                                    )
DONALD A. DAVIS, CO-TRUSTEE OF      )
THE DONALD DAVIS TRUST AND THE      )
JUTTA U. DAVIS TRUST DATED          )
OCTOBER 24, 2004; JUTTA U.          )
DAVIS, CO-TRUSTEE OF THE DONALD     )
A. DAVIS TRUST AND THE JUTTA U.     )
DAVIS TRUST DATED OCTOBER 24,       )
2004; GORDON ACKLEY; JENNIFER       )
ACKLEY; UNITED STATES OF            )
AMERICA (INTERNAL REVENUE           )
SERVICE); DONALD A. DAVIS;          )
JUTTA U. DAVIS,                     )
                                    )
                                    )
            Defendants.             )
```

**APPEARANCES:**

**Matthew Reinhardt**
ALAW
St. Thomas, U.S.V.I.
   *For The Bank of Nova Scotia,*

**Gretchen Shappert, United States Attorney**
**Sansara Adella Cannon, AUSA**
United States Attorney's Office
St. Thomas, U.S.V.I.
   *For the United States of America (Internal Revenue
   Service).*

## JUDGMENT

**GÓMEZ, J.**

Before the Court is the motion of The Bank of Nova Scotia for default judgment and summary judgment.

I.  **FACTUAL AND PROCEDURAL HISTORY**

Having reviewed the record, the Court makes the following findings of fact:

1. Donald A. Davis and Jutta U. Davis, as individuals and co-trustees of the Donald A. Davis Trust and the Jutta U. Davis Trust (collectively, the "Davises") are the record owners of property described as

    > Parcel No. 53 Remainder Estate Lindbergh Bay
    > No. 4A Southside Quarter
    > St. Thomas, Virgin Islands
    > as shown on OLG No. A9-581-T002

    (the "Property"). *See* ECF No. 46, Exh. B at 3.

2. Donald A. Davis is a competent adult and is not on active duty for any branch of the United States Uniformed Services.

3. Jutta U. Davis is a competent adult and is not on active duty for any branch of the United States Uniformed Services.

4. Gordon Ackley is a competent adult and is not on active duty for any branch of the United States Uniformed Services.

5. Jennifer Ackley is a competent adult and is not on active duty for any branch of the United States Uniformed Services.

6. On or about May 19, 2010, the Davises borrowed $1,000,000 from The Bank of Nova Scotia ("BNS").

7. On May 19, 2008, the Davises executed and delivered a promissory note (the "First Note") to BNS in which they promised to pay BNS the principal sum of $1,000,000, plus interest at a rate of 5.28% per annum in periodic installments.[1]

---

[1] BNS has not provided the Court with a copy of the First Note. Section 3-309, title 11A, of the Virgin Islands Code ("Section 3-309") provides:

> A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

11A V.I.C. § 3-309(a). BNS filed an affidavit from the manager of "Home Lending" in BNS's "Mortgage Unit" captioned "AFFIDAVIT OF LOST NOTE." *See* ECF No. 46, Exh. 1 at 1. The affidavit asserted that (1) BNS "is the lawful owner of the [First] Note, and is entitled to enforce [it]"; (2) the First Note was not transferred or seized; and (3) despite "a good faith, diligent search for the original [First] Note . . . , the original [First] Note could not be located and . . . [BNS] cannot reasonably obtain possession of [it]." *See id.* at 2.
 Section 3-309(b) provides that when a party endeavors to prove the existence of a lost note, the party "must prove the terms of the instrument and the person's right to enforce the instrument." 11A V.I.C. § 3-309(b). The Court finds that BNS has done so here. When such proof is made, the Court proceeds "as if the person seeking enforcement had produced the instrument." *See id.* Without a physical copy of the original note, however, the Court "may not enter judgment . . . . unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument." *See id.* Here, BNS has "agree[d] to indemnify and hold harmless the [Davises] . . . against any loss or damage that might occur by reason of a claim by another person to enforce the [First] Note." *See* ECF No. 46, Exh. 1 at 3. The Court finds this promise is sufficient protection for the Davises.

8. The First Note provides that the Davises will be in default by failing to pay an installment and that the Note will be become due and payable in its entirety by reason of default.

9. On May 19, 2008, the Davises delivered to BNS a real estate mortgage (the "First Mortgage") encumbering the Property and securing the First Note. The First Mortgage is attached to the Property. The First Mortgage's terms give BNS the right to foreclose on the Property in the event of a default on the Note.

10. On May 24, 2010, the First Mortgage was recorded at the Office of the Recorder of Deeds for the District of St. Thomas and St. John as Document Number 2010003822.

11. On May 19, 2010, BNS extended to the Davises a personal line of credit (the "Line of Credit") in the amount of $115,000, which allowed for a 5% overcharge. The Line of Credit requires the Davises to pay certain minimum payments based on the amounts advanced under the Line of Credit.

12. The Line of Credit provides that the Davises will be in default by failing to make a minimum payment when it becomes due. The Line of Credit also provides that the

    entire balance of the Line of Credit will become due and payable by reason of default.

13. On May 19, 2010, the Davises delivered to BNS a real estate mortgage (the "Second Mortgage") encumbering the Property and securing the Line of Credit. The Second Mortgage is attached to the Property. The Second Mortgage's terms give BNS the right to foreclose on the Property in the event of a default on the Line of Credit.

14. On May 24, 2010, the Second Mortgage was recorded at the Office of the Recorder of Deeds for the District of St. Thomas and St. John as Document Number 2010003823.

15. On or about January 28, 2011, the Davises borrowed $200,000 from BNS.

16. On January 28, 2011, the Davises executed and delivered a promissory note (the "Second Note") to BNS in which they promised to pay BNS the principal sum of $200,000 plus interest at a rate of 2.75% in monthly installments for 59 months. The Davises also promised to make a balloon payment of $59,521 on the 60th month from the date of the loan.

17. On January 28, 2011, the Davises delivered to BNS a real estate mortgage (the "Third Mortgage") encumbering the Property and securing $92,000 of the Davises' obligation

under the Second Note. The Third Mortgage is attached to the Property. The Third Mortgage's terms give BNS the right to foreclose on the Property in the event of a default on the Second Note.

18. On January 28, 2011, the Third Mortgage was recorded at the Office of the Recorder of Deeds for the District of St. Thomas and St. John as Document Number 2011000572.

19. The United States Department of Treasury, Internal Revenue Service ("IRS") holds a tax lien (the "Tax Lien") in the amount of $23,014.32 on the Property.

20. On November 2, 2016, the Tax Lien was recorded at the Office of the Recorder of Deeds for the District of St. Thomas and St. John as Document Number 2016007873.

21. Jennifer Ackley and Gordon Ackley (collectively, the "Ackleys") hold a judgment lien (the "Ackley Judgment Lien") in the amount of $745,682.69 on the Property.

22. On April 21, 2016, the Ackley Judgment Lien was recorded at the Office of the Recorder of Deeds for the District of St. Thomas and St. John as Document Number 2016002606.

23. On or about June 1, 2015, the Davises failed to pay an installment on the First Note when it became due. The Davises have failed to pay all subsequent payments.

24. On August 6, 2015, BNS gave the Davises written notice of the default on the First Note. BNS advised the Davises that failure to cure the default would result in acceleration and foreclosure.

25. The Davises have neither cured their default nor made the required payment of principal and interest as required by the Note and Mortgage. As a result, BNS accelerated the payment on the First Note.

26. On December 1, 2017, the Davises failed to pay a minimum instalment on the Line of Credit. The Davises have failed to pay all subsequent payments.

27. On January 17, 2017, BNS gave the Davises written notice of the default on the Line of Credit. BNS advised the Davises that the entire balance was due and payable.

28. The Davises have neither cured their default nor paid the balance on the Line of Credit as required by the Line of Credit and Second Mortgage.

29. On December 1, 2017, the Davises failed to pay the remaining principal and interest on the Second Note when it became due.

30. The Davises have neither cured their default nor made the required payment of principal and interest as required by the Second Note and Third Mortgage.

31. BNS initiated this action against the Davises to enforce the terms and conditions of the First Note and First Mortgage, the Line of Credit and Second Mortgage, and the Second Note and Third Mortgage.

32. The IRS was joined in the action.

33. The IRS was served and filed an answer to BNS's complaint.

34. The IRS does not oppose BNS's motion for default judgment and summary judgment.

35. Gordon Ackley and Jennifer Ackley were joined in the action.

36. On June 26, 2017, BNS served Gordon Ackley by personally delivering to him a summons and copy of the complaint.

37. On June 26, 2017, BNS served Jennifer Ackley by personally delivering to her a summons and copy of the complaint.

38. Gordon Ackley and Jennifer Ackley have not filed an answer or otherwise appeared in this action. On June 7, 2018, the Clerk of Court entered default against Gordon Ackley and Jennifer Ackley.

39. On September 28, 2017, BNS served Donald Davis by leaving a summons and a copy of the complaint with Jennifer Kelley, an adult that resided at Donald Davis's home.

40. On January 29, 2018, BNS served Donald Davis, as co-trustee of the Donald A. Davis Trust and the Jutta U.

>
> Davis Trust, by leaving a summons and a copy of the complaint with Jutta Davis, an adult that resided at Donald Davis's home.

41. On July 13, 2017, BNS served Jutta Davis by leaving a summons and a copy of the complaint Jutta Davis's daughter, an adult that resided at Jutta Davis's home.

42. On January 29, 2018, BNS served Jutta Davis, as co-trustee of the Donald A. Davis Trust and the Jutta U. Davis Trust, by personally delivering to her a summons and copy of the complaint.

43. Donald A. Davis and Jutta U. Davis, as individuals and co-trustees of the Donald A. Davis Trust and the Jutta U. Davis Trust, have not filed an answer to BNS's complaint or otherwise appeared in this action. On June 7, 2018, the Clerk of Court entered default against the Donald A. Davis and Jutta U. Davis, as individuals and co-trustees of the Donald A. Davis Trust and the Jutta U. Davis Trust.

44. Donald A. Davis and Jutta U. Davis, as individuals and co-trustees of the Donald A. Davis Trust and the Jutta U. Davis Trust, are in default on the First Note. As of July 3, 2018, The Davises are in debt to BNS in the principal amount of $923,954.62; plus interest on the Note in the amount of $154,752.51; costs in the amount of $1,678.26;

fees in the amount of $17,455.49; and reserve escrow of $38,004.41. The total amount of the Davises' indebtedness to BNS under the First Note is $1,135,845.29.

45. The Davises are in default on the Line of Credit. As of July 9, 2018, the Davises are in debt to BNS in the principal amount of $116,256.49; plus interest in the amount of $3,655.73. The total amount of the Davises' indebtedness to BNS under the Line of Credit is $119,921.22.

46. The Davises are in default on the Second Note. As of July 1, 2018, the Davises are in debt to BNS in the principal amount of $52,378.00; plus interest in the amount of $8,105.03. The total amount of the Davises' indebtedness to BNS under the Second Note is $60,483.03.

## II. DISCUSSION

Federal Rule of Civil Procedure 55(b)(2) allows courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading. *Anchorage Assoc. v. V.I. Bd. Of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990). A motion for entry of default judgment must contain evidence of the following: (1) that default was entered; (2) that the defendant has not appeared; (3) that the defendant is not an infant or incompetent; (4) that all pleadings were validly

served upon the defendant; (5) the amount of judgment and how it was calculated; and (6) an affidavit of non-military service. *See Bank of Nova Scotia v. Abdallah*, No. CV 20012-0033, 2014 WL 2976232, at *3 (D.V.I. July 1, 2014). In addition, the Court must consider three factors when determining whether to grant a default judgment: "(1) [the] prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest upon mere allegations, general denials, or ... vague statements ...." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991).

"[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

### III. ANALYSIS

To prevail on a debt and foreclosure claim, the plaintiff must show that: (1) the debtor executed a promissory note and mortgage; (2) the debtor is in default under the terms of the note and mortgage; and (3) the lender is authorized to foreclose on the property mortgaged as security for the note. *Thompson v. Florida Wood Treaters, Inc.*, 52 V.I. 986, 995 (D.V.I. 2009). The facts found by the Court establish each of the elements for a debt and foreclosure claim.

"When determining the priority of liens, the Virgin Islands is a race notice jurisdiction." *Kennedy Funding, Inc. v. Oracle Bus. Devs., LLC*, No. 2012-0009, 2016 U.S. Dist. LEXIS 13498, at

*18 (D.V.I. Feb. 4, 2016). As such, an earlier recorded instrument takes priority over a latter filed instrument. *See Moco Inves., Inc. v. United States*, 362 Fed App'x 305, 309 (3d Cir. 2010). The priority of the liens in this matter are as follows: (1) BNS's First Mortgage, which was recorded on May 24, 2010, as Document Number 2010003822; (2) BNS's Second Mortgage, which was recorded on May 24, 2010, as Document Number 2010003823; (3) BNS's Third Mortgage, which was recorded on January 28, 2011; (4) the Ackkley's Judgment Lien, which was recorded on April 21, 2016; and (5) the IRS's Tax Lien, which was recorded on November 2, 2016.

The premises considered, it is hereby

**ORDERED** that BNS's motion for default judgment and summary judgment docketed at ECF Number 46 is **GRANTED**; it is further

**ORDERED** that, on the First Note, BNS shall recover from the Davises the principal amount of $923,954.62; plus interest on the Note in the amount of $154,752.51; costs in the amount of $1,678.26; fees in the amount of $17,455.49; and reserve escrow of $38,004.41. Interest continues to accrue on the principal at rate of $133.65 per day from July 3, 2018, until the date of judgment; it is further

**ORDERED** that, on the Line of Credit, BNS shall recover from the Davises the principal amount of $116,256.49; plus interest in the amount of $3,655.73; it is further

**ORDERED** that, on the Second Note, BNS shall recover from the Davises the principal amount of $52,378.00; plus interest in the amount of $8,105.03. Interest continues to accrue on the principal at $11.28 per day from July 1, 2018, until the date of judgment; it is further

**ORDERED** that the First Mortgage is a first priority lien; it is further

**ORDERED** that the Second Mortgage is a second priority lien; it is further

**ORDERED** that the Third Mortgage is a third priority lien; it is further

**ORDERED** that the Ackley Judgment Lien is a fourth priority lien; it is further

**ORDERED** that the Tax Lien is a fifth priority lien; it is further

**ORDERED** that the First Mortgage, and any liens on the Property subsequent to the recording of the First Mortgage are hereby foreclosed; it is further

**ORDERED** that the Property shall be sold by the United States Marshal according to law and the proceeds of such sale

shall be applied first to the expenses associated with any sale, including but not limited to the costs of publication and the commission assessed by the United States Marshal's Service pursuant to Title 28, Section 1921 of the United States Code. Second, the proceeds of such sale shall be applied toward satisfaction of this Judgment in favor of BNS, including any costs and attorney's fees that may be awarded upon application and any sums that may be paid by BNS for insurance premiums, taxes, and expenditures necessary to maintain the Property pending sale with interest from the date of any such payment. Third, the proceeds of such sale shall be applied toward the satisfaction of such liens as required by Virgin Islands law. Pursuant to Title 5, Section 489(5) of the Virgin Islands Code, the surplus, if any, remaining after application of the proceeds as provided above, shall be returned to the debtor; and it is further

    **ORDERED** that

    1. Pursuant to Title 5, Section 484 of the Virgin Islands Code, notice of the Marshal's sale shall be posted for four (4) weeks prior to the sale in a public place in or near the Office of the Clerk of the Court; and published once a week for at least four (4) consecutive weeks prior to the sale in a newspaper regularly issued and of general

circulation in the U.S. Virgin Islands, which uses newsprint. The notice shall describe the Property as set out above and shall contain the terms and conditions of sale as set out herein.

2. The terms and conditions of the sale shall be as follows:

    a. The Property shall be sold as a whole at a public sale at the Office of the U.S. Marshal, Federal Building, St. Thomas, U.S. Virgin Islands.

    b. BNS may bid a credit against its Judgment and interest thereon, plus any costs and expenses, without tender of cash.

    c. The terms of the sale as to all other persons or parties bidding shall be cash.

    d. The successful bidder on the Property shall be required to deposit with the United States Marshal cash equal to ten percent of his total bid at or before 5:00 p.m. on the date of the sale of the Property; and the remaining ninety percent of the said purchase price to be paid on or before 5:00 p.m. within thirty days inclusive, of the date of sale of the Property.

    e. The United States Marshal shall make his report of

>    the sale of the Property within ten days from the
>    date of the sale.
>
> 3. BNS shall have any and all writs necessary to execute the terms of this Judgment.
>
> 4. The Davises shall be liable to BNS for any deficiency remaining after the sale of the Property; it is further

**ORDERED** that the trial setting in this matter is **VACATED**; it is further

**ORDERED** that all pending motions are **MOOT;** and it is further

**ORDERED** that the Clerk of Court shall **CLOSE** this case.

S\_____
**Curtis V. Gómez**
**District Judge**